IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**ROBIN LEE WEEKS,**
              **Plaintiff,**

**vs.**                                                **Case No. 5:05cv100/LAC/MD**

**JAMES MCDONOUGH,**
              **Defendant.**

_____

**REPORT AND RECOMMENDATION**

        This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon defendant's special report and supporting documents filed on November 10, 2005. (Doc. 10).  The *pro se* plaintiff, a state prisoner who is proceeding *in forma pauperis* in this action,[1] responded to the special report.  (Doc. 18).  On March 8, 2006 the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment as of April 7, 2006. (Doc. 19).  On March 29, 2006, plaintiff sought an extension of time in which to file additional argument or Rule 56 materials, arguing that he required discovery in order to provide documentary support for his claims.  (Doc. 21).  Although the court granted plaintiff an extension of time and permission to conduct discovery, plaintiff immediately filed his response to the summary judgment motion.  (Docs. 24 & 25). After plaintiff engaged in discovery, the parties were given the opportunity to supplement their previous submissions in light of the discovery. (Doc. 35).  Plaintiff has filed a supplemental response.  (Doc. 37).  Upon review of the summary

_____

        [1]Court records reflect as of August 14, 2006 the plaintiff has paid $200.00 toward the $250.00 filing fee; therefore, as of that date he still owes $50.00 to the court.

Case 5:05-cv-00100-LC-MD   Document 38   Filed 08/15/06   Page 2 of 11

Page 2 of 11

judgment record, it is the opinion of the undersigned that defendant's motion for summary judgment should be granted.

## BACKGROUND

Plaintiff was incarcerated at Washington Correctional Institution at the time of the events giving rise to this complaint.  In his verified complaint, he alleges that on October 25, 2004 he received an Unauthorized Mail Return Receipt stating that mail was returned to Coalition for Prisoners' Rights for the following reason: "Inmates are not permitted to receive items that contain advertisements for goods or service[s] that can be purchased with stamps."  (Doc. 1, p. 7).  Plaintiff alleges that the mail was returned pursuant to a rule implemented by defendant, specifically Chapter 33-210.101(22), Fla. Admin. Code.  According to plaintiff, this rule states that "inmates cannot receive mail that advertises or solicits items that may be purchased with postage stamps and may not purchase items for stamps as stamps are not legal tender."  (*Id.*).  Plaintiff challenges this rule, arguing that it violates his First and Fourteenth Amendment rights to "freedom of correspondence with society," "freedom from governmental intervention when it does not endanger the security, order and rehabilitation in a prison," and "liberty interest when it does not interfere with penological interests." (*Id.*, p. 8).  As relief, plaintiff seeks to "remove" Chapter 33-210.101(22) from the Florida Administrative Code, and to require the defendant to allow him to send postage stamps to non-profit organizations in return for educational materials.

Defendant McDonough, in his motion for summary judgment, argues that there was no Section (22) of the cited rule in place at the time of the mail rejection, nor is there presently such a section.  In support of this assertion, he attaches a copy of the current Rule 33-210.101 which has not been amended since September 20, 2004. The rule does not contain a section (22) or the language plaintiff attributes to the alleged rule.  (Doc. 10, ex. 2; *see also* FLA. ADMIN. CODE r. 33-210.101 (2006)). Defendant concedes, however, that plaintiff accurately portrays current Department of Corrections' policy, as reflected in the Unauthorized Mail Return Receipt, which

prohibits inmates from receiving correspondence which advertises for services or products which can be purchased with postage stamps. (*Id.*, p. 2). Defendant McDonough further submits that plaintiff may be referring to the <u>proposed rule amendment</u> to Chapter 33-210.101. Attached to defendant's motion for summary judgment is the affidavit of James Upchurch, Chief of the Bureau of Security Operations for the Florida Department of Corrections ("DOC") which refers to the "proposed" rule amendment as follows:

> It is the department's intent to clarify and more specifically address the issue of inappropriate postage stamp utilization in the proposed rule amendment to the inmate routine mail rule 33-201.101:
>
> (22) Inmates shall not use postage stamps as currency to pay for products or services. Postage stamps placed in outgoing mail for this purpose will be deemed contraband. Incoming mail that solicits inmates to purchase products or services and allows payment with postage stamps will be rejected.

(Doc. 10, ex. 3). Mr. Upchurch explains in his affidavit the penological interests underlying the current policy and proposed rule amendment, as follows:

> The justification for this restriction on postage stamp utilization is based upon the legitimate security concern that if stamps are allowed to be utilized as currency to purchase products and services, they will attain a value which exceeds that intrinsically associated with stamps as postage for correspondence and become an easily concealed item to be used for barter and gambling. Theft, extortion and the violence associated with such items of value in the prison setting can readily become a serious problem.
>
> The department has gone to great lengths to minimize the number of items of significant value within our facilities. Restrictions on personal clothing items, jewelry and other individually possessed items of value reduce the incidence of targeted inmates who possess such items from becoming victims and/or of attaining problematic influence and prominence within the population.
>
> Currency is not allowed both because of the risk associated with its use to facilitate successful escapes and, equally importantly, because of the same institutional security concerns discussed previously regarding postage stamps if they are allowed to be used as an alternative "currency." The department has developed and implemented a sophisticated "cashless canteen" system in order to

allow inmates to purchase items from the prison canteen to eliminate the need for currency inside the institutions.  We have also implemented strict search requirements for mail, visitors and staff to control currency introduction.

To permit stamps to be utilized to purchase products and services is contrary to our efforts to operate safe and secure institutions as free as possible from inmate on inmate violence and disruption.

(*Id.*).

In response to the special report, plaintiff submitted argument on the four factors articulated in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), urging the court to find that the policy used to prohibit his receipt of the publication was not rationally related to a legitimate governmental interest.  (Doc. 18).  In his response to this court's conversion order, plaintiff presented additional argument, but no Rule 56 materials.  (Doc. 25).  Plaintiff's supplemental response contains duplicative argument, and attaches a copy of defendant's discovery responses.  (Doc. 37).[2]

## DISCUSSION

### Summary Judgment Standard

In order to prevail on his motion for summary judgment, the defendant must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If the defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

---

[2]Neither plaintiff's response to the special report (doc. 18), his response to the motion for summary judgment (doc. 25), nor his supplemental response to the motion for summary judgment (doc. 37) is verified or sworn.  Thus, plaintiff's assertions therein are considered merely argument.

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id. Accord Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Further, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to the plaintiff.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S. Ct. at 2552.

First Amendment Standard

The First Amendment is made applicable to the states through the Fourteenth Amendment.  Prison regulations are permitted to abridge inmates' First Amendment rights provided they are "rationally related to a legitimate penological concern." *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. at 2261-62 (upholding a ban on all

inmate-to-inmate correspondence when inmates are housed in different prisons). Several factors are relevant in determining the reasonableness of the challenged regulation.  "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."  *Id.*, 482 U.S. at 89, 107 S.Ct. at 2262 (quoting *Block v. Rutherford*, 468 U.S. 576,, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984)).  A second factor is "whether there are alternative means of exercising the right that remain open to prison inmates."  *Id.*, 482 U.S. at 90.  "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Id.*  "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation."  *Id.*

<u>Conclusions of Law Regarding Material Facts</u>

The summary judgment record establishes that incoming routine mail correspondence to plaintiff was intercepted on October 25, 2004 and not delivered to him because it contained advertisements for goods and services that could be purchased with postage stamps.  (Doc. 1, p. 7 and ex. D; doc. 10, exs. 1, 3).  The mail was not returned pursuant to an alleged Section (22) of Chapter 33-210.101, Fla. Admin. Code, as no such Section (22) to that rule currently exists or existed at the time of the mail interception.[3]  What <u>was</u> applied to the publication at issue was a DOC policy (which is reflected in the proposed rule amendment) which provides: "Inmates shall not use postage stamps as currency to pay for products or services. Postage stamps placed in outgoing mail for this purpose will be deemed contraband. <u>Incoming mail that solicits inmates to purchase products or services and allows payment with postage stamps will be rejected</u>."  (Doc. 1, p. 7; doc. 10, ex. 3) (emphasis added).

_____

[3]Plaintiff argues in his supplemental response that there was a Section (22) in effect at the time his mail was rejected, that Section (22) served as the basis for the mail rejection, and that defendant is merely refusing to admit the existence of Section (22) and is secreting the copy of the rule which contains the offending section.  (Doc. 37, pp. 8-9).  This bald, unsworn assertion which has no evidentiary support in the summary judgment record and which is in fact contrary to the summary judgment evidence and to the legislative history of Rule 33-210.101, is insufficient to raise a genuine issue of material fact for trial.

The DOC's justifications for its policy (and the proposed rule amendment) stem from concerns that if stamps are allowed to be used as currency to purchase products and services: (1) they will attain a value which exceeds that intrinsically associated with stamps as postage for correspondence; (2) they will become an alternative "currency" posing the same threats to prison security as currency poses; (3) they will become an easily concealed item to be used for bartering and gambling; and (4) that extortion and violence will become a serious problem.  The DOC has expended a significant amount of prison resources to minimize the number of items of significant value within its institutions.  Allowing stamps to be used as currency would counter those efforts and impose additional burdens on staff.  Inmates' receipt of publications which encourage them to use stamps as currency implicates the same safety and security concerns.

In response, plaintiff argues that there is no logical connection between these justifications and the policy at issue for two reasons.  First, shortly after his publication was intercepted, the DOC amended another DOC rule, Rule 33-501.401(4)(c), to allow publications even though they contain advertisements promoting the purchase of goods and services with postage stamps, as long as the advertisement is incidental to, rather than being the focus of, the publication.  (Doc. 18, pp. 8, 13; doc. 25, p. 8); *see also* Fla. Admin. Code r. 33-501-401.[4]  Second, plaintiff argues that he knows of no instance where theft, extortion or violence has ensued due to stamps being utilized as currency.  (Doc. 25, p. 10; doc. 37, p. 14).

Plaintiff's arguments fail to raise a genuine factual dispute as to whether allowing stamps to be used as currency to purchase products can pose a threat to

---

[4]Rule 33-501.401(4), entitled "Admissible Reading Material," provides, in relevant part:

(4) Advertising.  A publication will not be rejected based upon inclusion of an advertisement promoting any of the following if the publication is otherwise admissible and the advertisement is merely incidental to, rather than being the focus of, the publication.

 (a) Three-way calling services;
 (b) Pen pal services;
 (c) The purchase of products or services with postage stamps; or
 (d) Conducting a business while incarcerated.

prison security, or whether publications encouraging this activity can pose a threat to prison security.  The rule allowing a publication when an advertisement therein is merely <u>incidental</u> to, rather than the sole purpose of, the publication is consistent with the DOC's security concerns about inmates being encouraged to use stamps as a form of currency.  That is why the rule contains the qualification that the advertisement be only <u>incidental</u> to the publication.  Additionally, nothing in Rule 33-501-401(4)(c) can be read as contradicting or retreating from the DOC's policy prohibiting inmates from using stamps as currency and disallowing publications which are largely dedicated to encouraging that activity.  Furthermore, plaintiff's bald assertion, unsupported by any Rule 56 materials, that there has been no instance where theft, extortion or violence has ensued due to stamps being utilized as currency, does not raise a genuine issue of material fact concerning whether the security interests proffered by the DOC are legitimate, or whether there is a valid, rational connection between the DOC policy and those interests.  Moreover, as plaintiff's own submissions indicate, the policy restricting publications on account of stamp-related solicitations operates in a neutral fashion, without regard to the viewpoint of the advertisement, publication, or goods being offered.  Based on the foregoing, the undersigned finds as a matter of law, that the penological concerns advanced by the DOC to justify its policy are legitimate, and that there is a valid, rational connection between the policy and those interests.

As to the second *Turner* factor, the United States Supreme Court has explained:

> [I]n the absence of substantial evidence in the record to indicate that the [prison] officials have exaggerated their response to [legitimate penological] considerations, courts should ordinarily defer to their expert judgment in such matters.  Courts cannot, of course, abdicate their constitutional responsibility to delineate and protect fundamental liberties.  But when the issue involves a regulation limiting one of several means of communication by an inmate, the institutional objectives furthered by that regulation and the measure of judicial deference owed to corrections officials in their attempt to serve those interests are relevant in gauging the validity of the regulation.

*Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974).  Here, DOC regulations disallow a publication when it solicits inmates to engage in the prohibited activity of using postage stamps as currency when such solicitation is not merely incidental to the publication.  This restricts one type of publication, leaving the inmate with access to all other forms of printed material which do not focus on such solicitations or contain other inadmissible content.  Plaintiff has failed to come forward with evidence raising a genuine issue of material fact for trial on this second *Turner* factor.  Accordingly, in light of the existence of alternative forms of publications open to prison inmates, this court cannot say on the record in this case that this neutral restriction on one type of publication is unconstitutional.

The next consideration is the impact accommodation of plaintiff's right will have on guards and other inmates, and on the allocation of prison resources generally.  As the defendant has established through the affidavit of Mr. Upchurch, allowing inmates to use postage stamps as an alternative currency would result in theft, extortion and violence.  Inmates possessing such items would be targeted by others and either be victimized or become problematically influential.  Likewise, allowing inmates to receive publications which advocate or encourage them to engage in this prohibited activity would undoubtedly increase the need for prison resources dedicated to monitoring and controlling stamp introduction and use, especially since stamps are easily concealed.

As a final consideration, the court looks to whether plaintiff has proffered any easy and obvious alternatives to the challenged restriction.  The existence of such alternatives would indicate that the challenged policy may be an "exaggerated response" by prison officials.  As the *Turner* Court explained, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."  *Id.*, 482 U.S. at 91, 107 S.Ct. at 2262.  Here, plaintiff proposes the following alternatives:

> **(1) Bring back education on a statewide basis or allow plaintiff and other similarly situated inmates to send stamps as has been happening for years to N.P.O's [non-profit organizations] and N.G.O's [non-**

governmental organizations] that supply educational materials so they can affix them to return envelopes and use them to obtain more educational materials.

(2) Allow plaintiff to send stamps to religious organizations (Islamic, Jewish, etc.) for learning materials and prayer articles as this is the only way for him and others to receive them.

(3) Allow plaintiff and similarly situated inmates to send stamps to political organizations that publish alternative views (Marxism-Humanism, Socialism, etc.) as it is his right to voice and/or read views of a political nature.

(Doc. 18, pp. 14-15).  However, plaintiff has not shown that the "costs" to prison safety and security associated with these alternatives would be any less, much less *de minimis*, if the regulation contained a subject matter exception.


## CONCLUSION

Upon full consideration of the evidence within the summary judgment record, the court concludes that material facts are not in dispute, and that defendant McDonough has demonstrated that he is entitled to judgment as a matter of law, *i.e.*, that the policy which was applied to plaintiff is reasonably related to legitimate security concerns of prison officials, so as not to be facially invalid.

Accordingly it is respectfully RECOMMENDED:

That defendant's motion for summary judgment (doc. 20) be GRANTED and the clerk be instructed to enter judgment in favor of the defendant and close this file.

At Pensacola, Florida this 15th day of August, 2006.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**